The case on the calendar for today is No. 203852 Tangtiwatanapaibul v. Tom & Toon Inc. Mr. Schweitzer, whenever you're ready. Excuse me. Thank you, your honors, and may it please the court. My name is Aaron Schweitzer. I'm the counsel for the plaintiffs who are appealing the decision of the magistrate judge in the Southern District of New York, Judge Parker, to enforce the terms of, sorry, to enforce term sheet that, in Judge Parker's view, memorialized the settlement between the parties. It's the plaintiff's position that, excuse me, sorry, this supposed term sheet was an FLSA settlement. It's the plaintiff's position that the magistrate judge erred in applying the Winston factors that govern whether to enforce non-written settlements. And, in particular, let's start with the fact that this was, in fact, an FLSA settlement. FLSA settlements, as this court has opined. Can you stand up and speak into the microphone? Testing. FLSA settlements, as this court has repeatedly opined in cheeks and more recently, are subject to fairness review by the district court. They are accordingly, as Judge Locke found in a 2016 opinion that we cited in our papers, of the sort that are usually committed to writing. And that is particularly true in this case. Can I just ask a question? And maybe this will help. And I apologize if this is too basic. But what contract would you have enforced in state court if not the term sheet? That is, excuse me, that's exactly the problem, Your Honor. The term sheet contemplated the parties drafting and executing a more full agreement. That agreement addressed, among other things, allocation of the funds between the parties. It addressed allocation, it addressed the amount of Between the parties, by between the parties you mean between the plaintiffs? Between the plaintiffs themselves, yes. Why would the defendants have to agree to that to make it a contract, settling the case? Because it goes, among other things, to their tax liability. This is an FLSA case. It is for, among other things, payment of unpaid wages as well as liquidated damages that are due under the FLSA. In some of these settlements, it's structured such that everything is a payment of wages. In other settlements, it's structured such that some of the money paid is payment of wages and some of the money paid is other income. That's not addressed in the term sheet and it's a very important term because it addresses both parties' tax liability. Can I back up? If we find that the district court properly dismissed this case, then why do we need to decide whether the term sheet is enforceable or not? Because it's only if you decide that the term sheet is enforceable that you can decide that the district court properly dismissed this case. The district court dismissed the case pursuant to a finding that the parties had made a settlement agreement and that the settlement agreement was memorialized in the term sheet. I see. I thought your argument on dismissal was that you'd never requested dismissal. Is that not right? I think there's some nuance being lost there. My argument was on appeal that the defendants, when they initially moved to enforce a settlement agreement, moved to enforce an agreement other than the term sheet. And the judge then reached back to the term sheet, sua sponte, without any party asking her to do so. And we had argued in our papers that this was an overstep of her authority. So are you saying that at no point did you tell the magistrate judge that you wanted to go and enforce this in state court? No, that was something that the magistrate judge came up with herself. At a conference in, I believe it was September 2020, she proposed finding that there was a settlement and that we go to the state court to enforce it. There's an October 8th conference, I think, where the district court said that you requested dismissal, and I think you're disputing that. Is that not right? I don't think we did. You did not know. OK. If the district court thought that you did, I mean, don't we have to review that for clear error? I would think so, yes. So what's the basis for saying that that's not right? Yes, and I think that such a review is warranted here. This case, sorry, the procedural history here is fairly complex. There was an initial settlement conference in June where the magistrate was actively involved in facilitating a negotiation between the parties. There was a second settlement conference in Judge Parker's courtroom in January of 2020 where the parties hashed out their written settlement agreement. But the June 2019 is where the term sheet was written up, is that right? Yes. I'm simply recounting Judge Parker was not involved in the January 2020 discussion. That was solely between the parties, and it just happened to be in her courtroom. But the term sheet had already been signed. The term sheet had already been signed. The term sheet contemplated the, expressly contemplated the drafting of a further agreement that contained further material terms. And among those, as I stated, were tax treatment. Wasn't there a line next to that provision that nobody checked? You're referring to page 85 of the appendix. Excuse me. Yes, the line check just simply states that there was binding agreement as of June 19 as to the material terms agreed on that date. Not that all terms in the term sheet were all of the material terms. And I submit and it's fairly clear from the briefing in this case that there is substantial ambiguity as to what the parties agreed the material terms to be outside the term sheet. In Apelli's briefing, they were interpolating terms from the modified agreement from April 2020. That's a different point from saying that this is not an enforceable agreement. The fact that there are other things that remain to be decided or agreed on doesn't mean that what you agreed on is not enforceable. The fact that there are other things that remain to be decided on is, excuse me, extremely important. That was the holding of, what was it? I'm just I guess what I'm asked. I think what my colleague is asking is, are you trying to argue or is your argument that this was not a binding agreement? Because there were other modifications that were still being either negotiated or terms that were still outstanding. Exactly, Your Honor. Okay. So what's in the term sheet might or might not. But there was an agreement on the term sheet, though, that said that you had reached agreement on all material terms, though. No, there is not. Excuse me. It simply states that the material terms in the term sheet are binding as of the date of the term sheet. But that doesn't say this is just some of the material terms. Somebody wrote in material terms. Yes, but nobody wrote in these are all of the material terms. And there were, in fact, outstanding material terms. Nobody wrote in these are some of the material terms. If nothing had been written in, then I would think your argument might have greater force. But somebody wrote in, thanks to this, what's decided as of the date. These are the material terms. Material terms. I submit that that's an ambiguity. And as long as there is outstanding ambiguity, then there isn't an enforceable agreement. I appear to be out of time. You're reserved two minutes for a vote. Mr. Minson. Yes, thank you, Your Honor. May it please the Court. My name is Morton Minsley, and I am appearing today on behalf of the defendant's appellees. Our position is simple, that the order appealed from by Judge Parker was correct and well within her discretion, and that the plaintiff's appellants have their remedies in state court. The passage of time has resulted, as they say, time heals all wounds. Well, now COVID has passed. My clients are back in business to the extent that they have a restaurant that they're operating, and tenuously, but hopefully ultimately successfully. And it's our position that the settlement agreement, as agreed, can be enforced in state court. The state court can decide. So are you abandoning the argument that the modifications matter? No. No, I'm not abandoning that argument. What I'm saying is that, as Judge Parker noted in her decision, that it would be up to the state court to determine what the contract was between the parties and what the scope of the contract was. One thing I would point out, even in the plaintiff's draft of the settlement agreement, which Judge Parker ruled was reflective of the term sheet, there was a provision that the out-of-country plaintiffs, the two plaintiffs who resided in Laos, if they executed the agreement, it had to be acknowledged before a counselor official of that country, and that was never done. And the agreement that the plaintiff drafted also divided up the amounts that would do each plaintiff, and so it's possible that the state court might rule that the amount of the settlement is reduced by the shares of those two plaintiffs who are in Laos who never executed the agreement before a counselor official. Nevertheless, Judge Parker did rule that at the October 8, 2020, conference, the plaintiff's counsel, and I'm reading from page, the supplemental record, page 7, plaintiff's counsel acknowledged that they could and would bring an enforcement action in state court upon approval of the settlement agreement pursuant to Cheeks and dismissal of the action. Plaintiff's counsel also submitted a letter asking the court to find the settlement fair and reasonable pursuant to Cheeks prior to dismissing the action. So it would seem that the plaintiff did ask Judge Parker to dismiss the action and enforce the settlement agreement, and that's where we are. And I think the next step is for plaintiff to leave and file whatever remedies plaintiffs deem appropriate in the state court, and we'll see them there. And it's possible, you know, hopefully we couldn't work this out in before or in the early stages of the state court litigation. I would hope so. I'm sorry, if I could ask, so in this circuit, as I know you know, there are circumstances in which we can say that preliminary agreements create binding obligations and that they generally fall into two types. One is the fully binding and then the binding preliminary commitment. Which one would you say this term sheet falls under? I think it was fully binding. I think then afterwards there was an effort, based on the extraordinary circumstances of the COVID crisis, to try to obtain an agreed-upon modification of the agreement. That's what our purpose was in approaching the court and approaching plaintiff's counsel, saying we don't want to go into default, we don't want to declare bankruptcies. In many of these cases, the FLSA cases, the restaurants go and sometimes the individual restaurant owners go bankrupt and the plaintiffs never see a nickel. So the idea was to avoid that and try to stay in business, meet the obligations as settled. And Judge Parker was very gracious and accommodating and offered her services to try to negotiate that, and we negotiated for months and we made our payments small, though they may be, during the time of the negotiation period. And then Judge Parker tried to help us negotiate a further modification with the goal that the whole settlement amount would be paid. And ironically, we're in October of 2022 now, which would be the time when the balance would be due. So we'll see where we are, if Your Honors are so gracious to uphold Judge Parker's ruling and the plaintiff goes to state court. Are your clients prepared to pay the amount of the settlement? Well, I spoke to them today and I told them that it's possible, in the basis that Your Honors' ruling today, that they should be very cognizant that they may have that obligation. So hopefully they would be. I'm not here with a check. Are they prepared to make that payment? I'm sorry, Your Honor? Are they prepared to? I would hope so. I would hope so. But like I said, I'm not here with a check to pay today. I wish I was, but I'm not. Have the parties met with our civil appeal management? No, no. There was never a camp conference on this. Do you think that might be useful? It might be. It might be, but I don't know. It was not selected. I was never notified of any mediation on this appeal. Mr. Schwartzer, do you think it might be useful? If the defense counsel says he is hopeful that his clients may be prepared to pay the amount of the settlement. I recall meeting with a camp representative by phone once. I don't believe in progress to full-blown mediation, but there was some discussion about whether that would be helpful. Shortly after the appeal was filed. Place yourself now in the present time. Do you think that might be helpful? A second referral might be helpful. However, one of the Winston factors is substantial performance of the agreement that is sought to be enforced. Here we've received $2,000 out of a $72,000 settlement that applies a doubling of the obligation upon non-payment. We've received no payment for two years. As Mr. Mintzley pointed out, now would be, even under his modifications, unilateral modifications that were not signed by the plaintiffs or their counsel, now would be the time when all of that would become due. As he said, he's not standing here with a check. I'm not sure that it would actually be helpful, but I would be hopeful that it would be helpful. Either this is going to go back to a district court who thinks this is going to be dismissed, or the dismissal will be affirmed and you'll go back to state court and try to enforce it there. I think the question is wouldn't mediation and attempted mediation be helpful rather than continuing this out in one of those two forms? If it goes back to the district court, it wouldn't be dismissed. It would be pursuant to a fine holding by this court that there was no enforceable agreement. Thus, there would be no call to dismiss anything. Maybe I can ask the question differently. If we sent you off to camp, do you have reason to believe that your client would negotiate a good pay? Of course, Your Honor. I guess the older I get, the less my memory works. Mr. Schweitzer is right. We did have a phone conference with a camp mediator. He jogged my mind when he mentioned that. I apologize. But at this point, your clients have spent quite a lot on attorney's fees, and it's only looking like it's going to be more. Oh, absolutely. I'm not saying it shouldn't. I'm just correcting the statement that I made that I couldn't remember offhand that we did actually speak to a camp mediator. I'm definitely willing to give it a try. Anything else? Nothing else, Your Honor. Thank you very much. Thank you, Mr. Inslee. Mr. Schweitzer, you're reserved two minutes for rebuttal. And, Mr. Schweitzer, if you could focus on what writing you thought needed, was going to be the source of an assessment as to whether or not it was a fair and reasonable settlement, if not the term sheet. Yes, Your Honor. If you look at the term sheet, it contemplates plaintiff producing a full-blown settlement agreement to defense counsel by July something 2019. That would include a schedule of payments. That would include an allocation of payments as between plaintiff's attorney's costs, as between plaintiffs themselves and as between fees. It would include a fully-blown scope of release. Here, that was very important. The release ended up being a mutual release rather than the unilateral release contemplated in the term sheet. And, as I said earlier to your colleague, whose name slips my mind, I'm very sorry, it contemplated tax treatment for the payments to plaintiffs. So, I mean, I guess the question is, what were you asking them to do a hearing that was fair and reasonable? It was the term sheet, right? Well, Your Honor, what... Did you have anything more formal? Well, Your Honor, what actually happened was Judge Parker dismissed the case without holding a fairness hearing at all in the first instance. And what I had written to Judge Parker to say was, Judge, you can't do this. Even if you're going to dismiss this at all, you have to hold a fairness hearing. And that was simply one ground to say why it shouldn't have been dismissed at that point. I had also in the same papers and subsequently noted that the parties had contemplated a full-blown settlement agreement and one had never been completed. That there had been no stipulation of dismissal, for instance. That there had been no confessions of judgment agreed to and signed. Even though... Any releases? That had been contemplated in the settlement agreement. Any releases given by your clients? Was that something that also had been done or had not been done? It had been drafted, but... And that had been incorporated in the settlement agreement. That was, I want to say, either Section 7 or 9. It's escaping me. One second. Yes, it's Section 8. If, for instance, you look at 8223, it appears in a number of places. But yes, the release terms were set forth in the fully-blown settlement agreement. Thank you, Mr. Pritchett. Any further questions? Okay, thank you both.  Thank you, Your Honor. Thank you very much. That concludes the arguments for today. I'll ask the courtroom deputy to adjourn. The court stands adjourned.